1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KEVIN BARTHOLOMEW,

11         Plaintiff,                    No. CIV S-08-3058 KJM CKD P

12      vs.

13   TERRY MOORE, et al.,

14         Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16         Plaintiff is a California prisoner proceeding pro se with an action for violation of

17   civil rights under 42 U.S.C. § 1983.  He sues defendants Lane and Cheser[1] (defendants) for

18   actions taken while they were employed with the California Department of Corrections and

19   Rehabilitation (CDCR) at California State Prison, Solano (CSPS).[2]  Plaintiff claims that both

20   defendants violated his First and Fourteenth Amendment rights.  Defendants have filed a motion

21   for summary judgment.

22   /////

23   _____

24        [1]  Plaintiff spells defendant Cheser's name "Chesser" in his amended complaint.  Counsel
     for defendants refers to him as "Cheser."

25        [2]  On October 9, 2009, the magistrate judge previously assigned to this case found that
     plaintiff's amended complaint states a claim upon which relief could be granted against
26   defendants Cheser and Lane.

1

I. Plaintiff's Allegations[3]

On October 15, 2007, plaintiff was placed in administrative segregation pursuant to an investigation into whether prison disciplinary proceedings should be initiated against him. An ancillary effect of plaintiff's being placed in administrative segregation was that he was terminated ("unassigned," in the prison jargon) from his job in the Prison Industries Authority (PIA) Metal Fabrication Plant at CSPS.

Plaintiff was released from administrative segregation on October 25, 2007. That day, plaintiff filed prisoner grievance No. CSP-S-07-03771 in which he complained about being unassigned from his job in the paint department at the PIA plant. In response to the grievance, plaintiff was informed by L. Rodrigues that he was eligible to return to his job at the plant and that he should request an interview with plant staff as the plant conducted its own hiring. Plaintiff submitted his request for interview to defendant Lane, Superintendent of Metal Products, on November 7, 2007.

Plaintiff alleges that he spoke with defendant Cheser that same day regarding plaintiff's grievance and the prospects for plaintiff being rehired at the PIA plant. According to plaintiff, Cheser said, "You didn't have to file this [appeal], but if you withdraw your appeal, and choose to work all day on Friday (volunteer overtime) instead of going to [Jumu'ah] (muslim) prayer on Fridays, I will have Brown (Office Clerk) type and process the paperwork to inmate assignment office to re-issue you a new workcard." Plaintiff did not withdraw his appeal and Cheser did not submit the paperwork necessary for plaintiff to be issued a workcard.

On November 8, 2007, plaintiff submitted his grievance to the next level of review. In the grievance plaintiff asserted that he requested an interview for employment at the PIA plant with defendant Lane but questioned the need for an interview. He asserted that his /////

---

[3] Plaintiff's allegations are derived from the text of his amended complaint as well as the attached exhibits.

2

1   reassignment to the PIA plant was being obstructed by defendant Cheser because plaintiff is a

2   Muslim.

3           On November 19, 2007, plaintiff reported to defendant Lane that defendant

4   Cheser was discriminating against him because of his religious beliefs.  Lane allegedly

5   responded, "you pissed [Cheser] off by filing that [grievance].  You brought this on yourself, just

6   drop the [appeal] and I will talk to [Cheser.]"

7           That same day, plaintiff was informed by defendant Lane that he should complete

8   an application for employment in the fabrication plant and return it to him.  Lane told plaintiff

9   that upon receipt of the application, plaintiff would be given equal consideration for employment

10  at the plant.  It is not clear whether plaintiff ever completed the application.

11          The appeal process for grievance No. CSP-S-07-03771 was completed on August

12  12, 2008.  In the final decision, the reviewer noted that plaintiff still sought a job at the PIA plant

13  and, at that time, plaintiff's name was on the waiting list for employment.  The reviewer noted

14  that plaintiff would be considered for  a job at the plant as soon as one became available.  It does

15  not appear that plaintiff was ever hired back at the plant.

16  II.  Summary Judgment Standard

17          Summary judgment is appropriate when it is demonstrated that there exists "no

18  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

19  matter of law."  Fed. R. Civ. P. 56(c).

20          Under summary judgment practice, the moving party

21      always bears the initial responsibility of informing the district court
        of the basis for its motion, and identifying those portions of "the
22      pleadings, depositions, answers to interrogatories, and admissions
        on file, together with the affidavits, if any," which it believes
23      demonstrate the absence of a genuine issue of material fact.

24  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

25  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

26  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

3

1   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

2   after adequate time for discovery and upon motion, against a party who fails to make a showing

3   sufficient to establish the existence of an element essential to that party's case, and on which that

4   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

5   concerning an essential element of the nonmoving party's case necessarily renders all other facts

6   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

7   whatever is before the district court demonstrates that the standard for entry of summary

8   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

9          If the moving party meets its initial responsibility, the burden then shifts to the

10  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

11  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

12  establish the existence of this factual dispute, the opposing party may not rely upon the

13  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

14  form of affidavits, and/or admissible discovery material, in support of its contention that the

15  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

16  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

17  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

18  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

19  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

20  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

21  1436 (9th Cir. 1987).

22         In the endeavor to establish the existence of a factual dispute, the opposing party

23  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

24  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

25  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

26  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

1   genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

2   committee's note on 1963 amendments).

3                In resolving the summary judgment motion, the court examines the pleadings,

4   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See Anderson</u>,

6   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

7   court must be drawn in favor of the opposing party.  <u>See Matsushita</u>, 475 U.S. at 587.

8   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

9   produce a factual predicate from which the inference may be drawn.  <u>See Richards v. Nielsen</u>

10  <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir.

11  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

12  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

13  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

14  'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

15               On November 4, 2009, the court advised plaintiff of the requirements for

16  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  <u>See Rand v.</u>

17  <u>Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), <u>cert. denied</u>, 527 U.S. 1035 (1999), and

18  <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

19  III.  <u>Analysis</u>

20               As indicated above, there is no allegation that plaintiff lost his job in the metal

21  fabrication plant due to the actions of either defendant.  What is at issue is the reason he was not

22  hired back after he was released from administrative segregation.  Defendants point to evidence

23  indicating that when plaintiff was released from administrative segregation, there was no longer a

24  job available for him in the PIA plant; instead his name was placed on the waiting list for

25  /////

26  /////

1    employment.  Defendants also point to evidence indicating that in 2007 and 2008, the waiting list

2    for employment at the plant included 600 or 700 names, for only about 140 positions.[4]

3              Nonetheless, there remains the possibility that defendants could have exercised

4    discretion to forgo the waiting list procedure and simply give plaintiff the first open job after his

5    brief stay in administrative segregation and after it was found that disciplinary charges would not

6    be filed against him.  Indeed, plaintiff points to a declaration from inmate Bradley Van Dyke (Ex.

7    12) in which Van Dyke states that in 2010, he was in a similar situation to plaintiff's, i.e. he was

8    placed into administrative segregation pursuant to an investigation into whether he violated

9    prison rules, yet he was reinstated at the PIA plant after he was released from administrative

10   segregation.[5]

11             Thus, there is at least a genuine issue of material fact before the court as to

12   whether defendants could have hired plaintiff back at the PIA plant.  The question then becomes

13   whether there is at least a genuine issue of material fact as to whether the defendants acted with

14   an unlawful purpose in failing to rehire plaintiff.  Plaintiff asserts several such unlawful

15   purposes, each separately analyzed below.

16        A.  Right To Free Exercise

17             First, plaintiff alleges defendant Cheser conditioned plaintiff's being rehired in the

18   PIA plant on plaintiff's being willing to work Fridays, thus missing Jumu'ah, in violation of his

19   right to free exercise of his religion arising under the First Amendment.

20             Defendants assert the defense of qualified immunity with respect to this claim, as

21   well as all of plaintiff's other claims.  Government officials performing discretionary functions

22   generally are shielded from liability for civil damages insofar as their conduct does not violate

23

24        [4] At that time there were approximately 142 positions available.  Now there are only
     about 100 positions available.  Additionally, turnover of positions in the plant is low as inmates
25   who work in the plant tend to remain in their positions for long periods of time.

26        [5] Defendants' objection that the Van Dyke declaration is inadmissible because it is
     irrelevant (objection No. 8) is overruled.

1    clearly established statutory or constitutional rights of which a reasonable person would have

2    known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a governmental

3    officer is immune from suit based on the doctrine of qualified immunity, the court must answer

4    two questions.  The first is whether the officer's conduct violated a constitutional right.  Saucier

5    v. Katz, 533 U.S. 194, 201 (2001).  The second is "whether the right was clearly established," id.,

6    and it is plaintiff's burden to show that it was, Alston v. Reed, 663 F.3d 1094, 1098 (9th Cir.

7    2011).  A negative answer to either question means immunity from suit is appropriate.  Pearson

8    v. Callahan, 555 U.S. 223, 236 (2009).

9            There are two important cases involving free exercise claims which are at least

10   similar to plaintiff's.  In O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), the Supreme Court

11   analyzed free exercise claims brought by certain inmates who claimed they were forced to miss

12   Jumu'ah.  The inmates were forced to work outside of their prison and, because of prison

13   regulations prompted by purported security issues, they were not permitted to return to the prison

14   on Friday afternoons to attend Jumu'ah.  Id. at 345-47.  The Supreme Court analyzed the facts of

15   the case and ultimately found that because the regulations at issue were reasonably related to

16   legitimate penological interests, defendants were entitled to summary judgment with respect to

17   plaintiffs' claims.  Id. at 353.

18           In Mayweathers v. Newland, 258 F.3d 930 (9th Cir. 2001) inmates at CSPS

19   asserted their rights to free exercise had been violated as well.  In that case, certain inmates were

20   disciplined for choosing not to attend work and attending Jumu'ah instead.  The inmates who

21   brought the suit were enrolled in a program where they could receive one day of sentence credit

22   for every day of work.  Id. at 933.[6]  If the inmates missed work for attending Jumu'ah, they could

23   be, and sometimes were, punished with, among other things, suspension of certain privileges or

24

25         [6] In Mayweathers, the Ninth Circuit noted that this program is not available for inmates
     serving life sentences.  Mayweathers, 258 F.3d at 933.  It appears plaintiff is serving a life
26   sentence.  Am. Compl. at 7.

                                              7

1   confinement to quarters.  Id.  The Ninth Circuit found that the policy of punishing inmates for

2   attending Jumu'ah violated the Free Exercise Clause because it was not rationally related to a

3   legitimate penological purpose.  Id. at 938.

4         The difference between plaintiff's claims and those presented in O'Lone and

5   Mayweathers is that plaintiff was not denied the opportunity to attend Jumu'ah like the plaintiffs

6   in O'Lone, nor was he punished for attending Jumu'ah as were the plaintiffs in Mayweathers.

7   Further, unlike the situation in O'Lone, in this case employment in the PIA plant was not

8   mandatory, but was a privilege granted at the discretion of PIA management to inmates interested

9   in working there and qualified to do so.[7]

10        Plaintiff fails to point to any cases which establish he has a First Amendment right

11  to work the prison job of his choice, in this case in the PIA plant, and attend Jumu'ah.  The court

12  has attempted to find cases in which the issues are more closely analogous to plaintiff's than

13  O'Lone and Mayweathers without success.  Given all of this, the court must find defendants are

14  immune from plaintiff's Free Exercise Clause claim because plaintiff has not shown that

15  defendants violated any of plaintiff's clearly established rights.

16      B.  Retaliation

17        Plaintiff's second claim is that defendants violated plaintiff's First Amendment

18  rights by refusing to hire him back into the PIA plant as retaliation for his refusal to withdraw his

19  grievance.  The filing of a prisoner grievance is protected activity under the First Amendment.

20  Griffin v. Lopez, 230 F.3d 1366, 1138 (9th Cir. 1989).  Prison officials generally cannot retaliate

21  against inmates for exercising First Amendment rights.  Rizzo v. Dawson, 778 F.2d 527, 531

22  (9th Cir. 1985).  A prisoner suing prison officials under section 1983 for retaliation must show

23  that he was retaliated against for exercising his constitutional rights and that the retaliatory action

24

25        [7]  Essentially, plaintiff's claim is more properly read as a denial of equal protection claim
    under the Fourteenth Amendment as plaintiff does not really assert he was ever denied the right
    to exercise his religion, he asserts he was denied a privilege because of his religious affiliation.
26  See section C infra.

1    does not advance legitimate penological goals, such as preserving institutional order and

2    discipline.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  Plaintiff must establish a nexus

3    between the retaliatory act and the protected activity, see Huskey v. City of San Jose, 204 F.3d

4    893, 899 (9th Cir. 2000), and must show he suffered more than minimal harm, Rhodes v.

5    Robinson, 408 F.3d 559, 568 n. 11 (9th Cir. 2005).  The plaintiff bears the burden of pleading

6    and proving the absence of legitimate correctional goals for the conduct of which he complains.

7    Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

8              Essentially, plaintiff indicates that he learned from both defendants that at least

9    one of the reasons he was not hired back into the PIA plant by them was because he refused to

10   withdraw his grievance about losing his job in the first place.  As indicated above, defendants

11   now suggest there was no room for plaintiff at the PIA plant when he was released from

12   administrative segregation.  But defendants do not present any evidence indicating they had no

13   discretion to hire plaintiff back immediately, and plaintiff presents evidence indicating that at

14   least one inmate was hired back immediately.  Accordingly, there are genuine issues of material

15   fact as to whether defendants did not hire plaintiff back at the PIA plant because he refused to

16   withdraw grievance No. CSP-S-07-03771 and whether any legitimate penological goals were

17   furthered by defendants' actions.  It cannot be disputed that plaintiff's pursuit of prisoner

18   grievance No. CSP-S-07-03771 was protected activity under the First Amendment and that he

19   suffered more than minimal harm, i.e. not being hired back at the PIA plant, as a result of

20   defendants' alleged retaliation.  For these reasons, the court will recommend that defendants'

21   motion for summary judgment be denied with respect to plaintiff's First Amendment retaliation

22   claim.

23             Again, defendants assert they are entitled to immunity from plaintiff's retaliation

24   claim under the "qualified immunity doctrine."  As indicated above, however, the court finds

25   there is at least a genuine issue of material fact as to whether defendants retaliated against

26   plaintiff for his use of the prisoner grievance process in violation of the First Amendment.  Also,

1   as indicated above, plaintiff has a clearly established right under the First Amendment, and

2   interpretive case law, to file grievances with prison officials, and not be retaliated against for

3   doing so.  Defendants' qualified immunity argument with respect to plaintiff's First Amendment

4   retaliation claim should therefore be rejected.

5         C.  Equal Protection

6               Plaintiff's third claim is that he was not hired back into the PIA plant, at least in

7   part, because of his religious beliefs in violation of the Equal Protection Clause of the Fourteenth

8   Amendment.  Under the Equal Protection Clause of the Fourteenth Amendment, states must

9   generally treat similarly situated people the same.  City of Cleburne v. Cleburne Living Center,

10  473 U.S. 432, 439 (1985).  A plaintiff can establish a violation of his rights under the Equal

11  Protection Clause if he establishes that defendants intentionally discriminated against him based

12  on his membership in a protected class, Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir.

13  1998), such as religious affiliation.  Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-

14  933 (11th Cir. 1986).

15              There simply is no evidence before the court indicating plaintiff was not hired

16  back to the PIA plant because plaintiff is a Muslim.  Both defendants indicate in their affidavits

17  that plaintiff's religious beliefs had no bearing on whether they hired plaintiff back into the PIA

18  plant and that they were unaware of his religious affiliation.  Further, there is nothing to indicate

19  that either defendant treated plaintiff differently from anybody else during his first term of

20  employment at the PIA plant, and there is no evidence that either defendant had any animosity

21  toward Muslims in general.[8]  In fact, a letter written by defendant Lane on September 12, 2007

22  indicates that he was very happy with plaintiff's work.  Decl. of Cliff Lane, Ex. A at 10.

23

24        [8] Plaintiff submitted numerous exhibits including affidavits from other inmates, but the
     court cannot conclude that they support his position. For example, plaintiff points to an affidavit
25    from inmate Lee Bonner (Opp'n at 10) in which Mr. Bonner asserts defendant Cheser's animus
     towards Muslim inmates is reflected by the fact that Cheser moved the location of Muslim group
     prayer around the PIA plant.  It is not clear to the court how Cheser moving the location of
26    Muslim prayer around the PIA plant occasionally reflects animus towards Muslims.

While plaintiff asserts that defendant Cheser told plaintiff that to be hired back into the PIA plant he would have to miss Jumu'ah on Fridays to work, this alone is not enough to show that plaintiff was not hired back because he is Muslim; nothing reasonably suggests this was intended as some sort of back-handed way to keep plaintiff from working in the PIA plant because of his religion. Accordingly, the court will recommend that defendants be granted summary judgment with respect to plaintiff's equal protection claim.[9]

D. Due Process

Plaintiff's fourth claim is that the defendants violated his right to due process under the Fourteenth Amendment, presumably for not reinstating him into his PIA plant job.[10] However, plaintiff does not have a property or liberty interest in a prison job which is protected by the Due Process Clause. Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004). Therefore, summary judgment should also be granted to defendants with respect to plaintiff's due process claims.[11]

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendant Lane and Cheser's September 3, 2010 motion for summary judgment be granted in part and denied in part as follows:

A. Denied with respect to plaintiff's claim that defendants Cheser and Lane violated plaintiff's rights arising under the First Amendment by retaliating against plaintiff for pursuing an inmate grievance; and

B. Granted in all other respects.

/////

[9] It is also clear that defendants are immune from any equal protection claim under the doctrine of "qualified immunity."

[10] Plaintiff's complaint is not entirely clear on this point, but the court concludes this is what he intends to communicate.

[11] As with the equal protection claim, it is clear that defendants are also immune from any due process claim under the doctrine of "qualified immunity."

1     2.  Plaintiff be ordered to file his pretrial statement in which he addresses only his

2  claim that defendants retaliated against him for pursuing a prisoner grievance within thirty days

3  of any order adopting the foregoing findings and recommendations.  Defendants be ordered to

4  file their pretrial statement within twenty-one days of service of plaintiff's.

5          These findings and recommendations are submitted to the United States District

6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

7  one days after being served with these findings and recommendations, any party may file written

8  objections with the court and serve a copy on all parties.  Such a document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within fourteen days after service of the objections.  The parties are

11  advised that failure to file objections within the specified time may waive the right to appeal the

12  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13   Dated: January 26, 2012

14                                                 _____

15                                                 CAROLYN K. DELANEY
                                                   UNITED STATES MAGISTRATE JUDGE

16

17

18

19  1
    bart3058.57
20

21

22

23

24

25

26